UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-21586-WILLIAMS/GOODMAN

CHRISOVALANTOU ANASTASOPOULOS,

    Plaintiff,

vs.

INK 477 LLC,

    Defendant.
_____/

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND
TO DISMISS WITH PREJUDICE**

Plaintiff, Chrisovalantou Anastasopoulos, ("*Plaintiff*"), on behalf of herself and the opt-in plaintiff, Dimitra Anastasopoulos, (collectively, "*Plaintiffs*"), and Defendant, INK 477, LLC ("*Defendant*" or "INK"), (hereinafter, collectively, the "*Parties*") respectfully move this Court for an Order: (1) approving the terms of the settlement they have agreed upon; and (2) dismissing this case with prejudice upon condition that it retain jurisdiction to enforce the terms of the Parties' Settlement Agreement. *See* Settlement Agreement Attached as Exhibit 1.

In addition, Plaintiff respectfully moves this Court for an Order approving the attached award of attorneys' fees and reimbursement of litigation costs incurred pursuant to 29 U.S.C. §216(b). Defendants do not oppose the Plaintiffs' request and agree that the attorney's fees and costs are fair and reasonable.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed this putative collective action against Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA") on February 29, 2024 (ECF No. 1) (the "*Lawsuit*" or the "*Action*"). In the Lawsuit, Plaintiff alleged that Defendant exercised complete control over

1

the credit card tips that its patrons left for its tipped employees, accumulating them in a "tip pool" or another aggregate arrangement, and that Defendant either retained a portion of the tips collected (by failing to distribute all tips and overtips collected) and/or distributed a portion of the tips and overtips to traditionally non-tipped employees (such as owners, officers, directors, partners, managers, or supervisors) purportedly in violation of 29 U.S.C. §203(m)(2)(B). *See* ECF-1 at ¶28.

Defendant filed its Answer and Affirmative Defenses to Plaintiff's Collective Action Complaint. *See* ECF No. 16. In its Answer, Defendant denied that it improperly collected and or improperly distributed the tips and during the discovery process presented records showing all the collections and distributions of said tips to the members of the tip pools. The Parties filed a Joint Scheduling Report ("JSR") on July 15, 2024. *See* ECF No. 26.

Later, one (1) former employee of Defendant, Dimitra Anastasopoulos ("Opt-in Plaintiff"), the Plaintiff's sister, signed a consent form, filed herein, agreeing to be bound by any decision in this case. *See* ECF-31.

On August 19, 2024, an in-person settlement conference was held. However, no settlement was reached. *See* ECF-32.

Plaintiff thereafter filed a Motion for Conditional Certification, to which Defendant filed its Response, followed by Plaintiff's Reply. *See* ECF-34, 36, 43.

Plaintiff, Chrisovalantou Anastasopoulos, Opt-In Plaintiff, Dimitra Anastasopoulos, and a representative of the Defendant, along with their respective counsel, attended mediation on December 19, 2024. After further rounds of settlement communications and exchange of additional records, worked together in good faith to ultimately agree on settlement terms on December 24, 2024. The parties reduced their settlement terms to a written Agreement, appended hereto at Exhibit 1, which embodies the settlement of a contested and bona fide dispute under the FLSA. Defendants

2

have agreed to enter these Agreements to avoid further expense and disruption of business due to the pendency of litigation.

### A.     Summary of the Settlement Terms

Under the Agreement, Defendant will pay an agreed-upon sum to satisfy its payment obligation under the Agreement to Plaintiff, Opt-in Plaintiff, and their counsel ("*Settlement Amount*"); this represents the maximum amount Defendant will be required to pay to satisfy its obligations under the Agreement to Plaintiff, Opt-in Plaintiff, and their counsel.

During the course of the litigation, the Parties engaged in extensive factual investigation and formal and informal discovery relating to the claims of Plaintiff and the Opt-In Plaintiff in the case, including interviewing witnesses, obtaining information relating to the employment and earnings of the Plaintiff and Opt-In Plaintiff, and exchanging written discovery. The Parties have vigorously litigated this case and they began discovery as well as thorough investigations into and evaluation of the law and facts relating to matters set forth in this Action. Plaintiff also pursued the assemblage of a collective action under the FLSA, which Defendant opposed, increasing the potential for additional exposure to back wage damages, liquidated damages, attorney's fees, and costs for the Defendant.

As a result of the mediation, Defendant agreed to the settlement to efficiently resolve this litigation and thereby save further litigation expenses. Defendant does not admit the alleged violations contained in Plaintiff's Collective Action Complaint (ECF No. 1) and maintains that it, at all times, acted in good faith and without knowledge of or participation in any alleged wrongdoing. Plaintiff and Opt-in Plaintiff have agreed to the settlement because they believe that it represents a fair, adequate, and reasonable settlement of the case under all circumstances, and takes into account the risks and costs of going forward with the case.

Each Settlement Payment is based upon the total number of weeks in which the Plaintiff and Opt-In Plaintiff worked as a service/restaurant employee and after considering the relatively small amount that would have been owed for each such week if liability were to have been established.

In exchange for their amount to be received by Plaintiff and the Opt-In Plaintiff through the Agreement, this Lawsuit will be dismissed with prejudice, and the Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit. In addition, in exchange for General Release Payment, Plaintiffs will provide Defendant with a general release as set forth in the Agreement, upon condition that the Court retain jurisdiction for 60 days to enforce the parties' Agreement.

## II.  LEGAL PRINCIPLES

Under well-established law, there are two ways in which FLSA can be settled and released by employees. First, section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employees is supervised by the Secretary of Labor. *See* U.S.C. §216 (c); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the court enters a judgement approving the fairness of the settlement. *Id.*; *see also* Schulte, Inc. v Gandi, 328 U.S. 108 (1946); Jarrad v. Southeastern Shipbuilding Corp., 163 F.2d 960,

961 (5th Cir. 1947). In addressing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has explained:

> Settlements may be permissible in the context of a suit brought by Employees under the FLSA for back wages because initiation of the Action by the employees provides some assurance of an adversarial contact. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a compromise is reached over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the encouraging settlement of litigation. *See* Lynn's Food Stores, 679 F.2d at 1354.

The settlement of the instant action involves just such a situation in which the Court may approve the Parties' settlement to resolve and release Plaintiffs' FLSA claims. The proposed settlement arises out of an action filed by Plaintiffs against their former employer, which is adversarial in nature. *See* Martin v. Spring Break '83 Prods., LLC, 688 F.3d 247(5th Cir.2012)(finding *Lynn's Food* fairness concerns not implicated regarding settlement that occurred within the context of a lawsuit where a plaintiff employee is represented by counsel. During the litigation and settlement of this action, Plaintiffs were and are represented by counsel. The Parties' settlement of Plaintiffs' FLSA claims are the result of a *bona fide* compromise between them on a variety of disputes of law and fact, including without limitation: (a) whether Plaintiffs worked any compensable time without compensation; (b) the number of overtime hours Plaintiffs allegedly worked each workweek; (c) whether Plaintiffs were exempt from the FLSA; (d) whether Defendants' actions were willful; and (e) whether Defendant acted in good faith.

The following factors are typically considered by the Court in determining the reasonableness of the agreement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinion of the counsel. See Johnson v. Gonzo Mktg. Servs., LLC, No. 21-60775-CIV, 2021 WL 8363200, at *2 (S.D.Fla. Oct. 20, 2021) (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n,* 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)).

As to the *first factor*, there is no fraud or collusion behind the settlement. Each party is and was represented by counsel experienced in FLSA matters and who regularly litigate labor and employment matters. The Parties decided to resolve the claims because of inherent risks and substantial costs of litigation. Additionally, the Parties negotiated the settlement terms and spent many hours revising and exchanging drafts of settlement documents to reach an arm's length settlement. The proposed settlement is the product of vigorous litigation and extensive negotiation.

As to the *second factor,* the case presents complex legal and factual issues. If the case were to be fully litigated, additional discovery required would result in substantial additional time and expense in further litigation of the case beyond that already incurred. Summary judgment proceedings, a decertification motion, a trial on the merits of issues not resolved at summary judgment, and potential subsequent hearings and/or separate proceedings on damages would have been lengthy, time-consuming, and expensive, and the defense mounted so far by the Defendant, and could potentially result in protracted appellate proceedings lasting many, many years. The expense of litigation to Defendant is greater than the amount of the settlement. Likewise, Plaintiffs risk of losing the trial and the duration of the litigation weighed in favor

of the settlement. The Settlement, on the other hand, provides substantial relief to the Plaintiff and Opt-in Plaintiffs, promptly and efficiently.

As to the *third factor,* the parties engaged in extensive factual investigation and formal and informal discovery of the Plaintiffs' claims, including interviewing witnesses, obtaining information relating to the employment and earnings of each Opt-In Plaintiff, and exchanging written discovery. The Parties have vigorously litigated this case, and they have conducted initial discovery and a thorough investigation into and evaluation of the law and facts relating to matters set forth in this action. As a result of the Parties' settlement conferral efforts, and mediation, a resolution of this matter was reached without the need for extensive additional discovery and prolonged litigation.

As to the *fourth factor,* there are several disputed issues. While the Plaintiffs believe that disallowed managers and officials received tips contrary to the provisions of the FLSA, Defendant vigorously disputed the issue of liability and believes it has strong evidence showing the proper distribution of the tip pools. Defendant also believes that the discovery of the claims demonstrate compliance, however, the mathematical computation using the available records and data would require the use of a Forensic Accountant. The foregoing shows the impending costs of defense and difference between the amount of small amount of any recovery, if any, but the gross cost of any success. Therefore, the settlement is in the best interest of the Plaintiffs and is fair and reasonable.

As to the *fifth factor,* if Defendant would have prevailed in its defenses, Plaintiffs potentially may have recovered nothing or far less than what they are receiving under the settlement or may have owed a cost judgment to Defendant. If Plaintiffs were to prevail, Defendant would potentially be indebted to Plaintiffs for a judgement for wages, for part or all

of Plaintiffs' claims, awards for liquated damages, and attorneys' fees and costs. Consequently, the Parties recognize the uncertainty in proceeding with this action, lengthy litigation, and the investment of additional time to continue litigating this case, as well as the expenditure of costs and fees that will be incurred as the case continues to progress. In recognition of all these concerns, the Parties have agreed to resolve this case.

As to the *sixth factor,* counsel for the Parties believe the settlement is fair and reasonable resolution of the FLSA claims. Plaintiffs' Counsel and Defendant's Counsel are experienced attorneys with significant background in FLSA litigation.

### III. THE ATTORNEY'S FEES AND COSTS PAID TO PLAINTIFFS' COUNSEL

The Settlement Agreement provides that Plaintiffs' counsel will receive payment of attorney's fees and costs. These amounts were negotiated separately from those amounts proposed to be paid to the Plaintiff and Opt-In Plaintiff. The parties assert that these amounts are fair and reasonable, given the fees and costs incurred in this matter, the Defendant's vigorous defense, and the results obtained on behalf of the Plaintiff and the Opt-In Plaintiff. The Plaintiffs' Counsel also assert they are experienced in wage and hour collective actions and have extensive experience litigating FLSA collective actions.

The recovery by Plaintiffs was not adversely affected by the amount of the attorneys' fees and costs to be paid to their counsel. As explained in Bonetti v. Embarq Management Co., 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009), where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to her attorney, the Court will approve

the settlement without separately considering the reasonableness of the fee paid to plaintiff's counsel." Bonetti, 2009 U.S. Dist. LEXIS 68075 AT *15-16. Furie v. Expel, LLC, No. 3:19-CV-117-J-32PDB, 2019 U.S. Dist. LEXIS 235560, AT *11 (M.D. Fla. Sep. 17, 2019)(following *Bonetti,* as the fees were separately negotiated, the court declared it unnecessary to conduct a lodestar review; Texas v. New World Van Lines of Fla., No. 6:20-cv-445-RBD-LRH, 2021 U.S. Dist. LEXIS 110172, at *7-8 (M.D. Fla. June 10, 2021)(accepting the representations of the attorneys that the fees were separately negotiated, the Court accepts and approves the fees to be paid without further scrutiny.

The Parties respectfully stipulate that the quantum of attorneys' fees and costs Defendant agreed to pay Plaintiffs, and their counsel is fair. The Parties negotiated, and the Defendant agreed to pay attorneys' fees and costs incurred by the Plaintiffs. Bargained-for-provisions on attorney's fees in a settlement agreement control the issue of attorney's fee. Embree v. Medicredit, Inc., 752 F. App'x 697, 700 (11th Cir. 2018) (citing *Pottinger v. City of Miami,* 805 F. 3d 1293, 1300 (11th Cir. 2015)). The settlements negotiated reached by the Parties reflect a reasonable compromise of the disputed issue. Plaintiffs and their counsel discussed the viability of Plaintiffs' claims and formulated their own proposed settlement figures. The Parties then continued to engage in settlement discussions based on their independent calculations. Ultimately, the attorney's fees and costs to be paid under the Agreement represent a compromise as a reduction in the attorney's fees and costs actually incurred by Plaintiff's counsel in litigating this case for the Plaintiffs.

The Parties, through counsel, voluntarily agreed to the terms of their settlements during negotiations. All Parties were counseled and represented by their respective attorneys through litigation, mediation, and settlement. All Parties signed the Agreement.

## IV. <u>CONCLUSION</u>

Based upon the foregoing, the Parties request that the Court enter an order approving the parties' FLSA Settlement Agreement, including the settlement amounts payable to the Plaintiffs, to their counsel for attorney's fees and costs, and all other terms of the their Settlement Agreement, and dismiss this Action with prejudice upon condition that the Magistrate Judge of this Court retain jurisdiction for 60 days to enforce the parties' Agreement. Additionally, pursuant to S.D. Fla. L.R. 7.1(a)(2), a proposed order granting the Motion is attached as Exhibit 2.

Dated this 3rd day of February 2025.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| <u>s/ Patrick Brooks LaRou</u> | <u>s/ Sergio R. Casiano, Jr.</u> |
| Brian H. Pollock, Esq. | Sergio R. Casiano, Jr., Esq. |
| Fla. Bar No. 174742 | Florida Bar No. 457302 |
| brian@fairlawattorney.com | WILSON, ELSER, MOSKOWITZ, EDELMAN & |
| Patrick Brooks LaRou, Esq. | DICKER, LLP. |
| Fla. Bar No. 1039018 | 100 SE Second Street, Suite 2100 |
| brooks@fairlawattorney.com | Miami, FL 33131 |
| FAIRLAW FIRM | Telephone: (305)374-4400 |
| 135 San Lorenzo Avenue, Suite 770 | Facsimile: (305)579-0261 |
| Coral Gables, FL 33146 | Email: Sergio.casiano@wilsonelser.com |
| Tel: 305.230.4884 | |
| | *<u>Attorneys for Defendant</u>* |
| *<u>Attorneys for Plaintiffs</u>* | |